**ANTONIA M. APPS**
**REGIONAL DIRECTOR**
**Thomas P. Smith, Jr.**
**Sandeep Satwalekar**
**Nicholas Karasimas**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street**
**Suite 20-100**
**New York, NY 10004-2616**
**212-336-0086 (Karasimas)**
**KarasimasN@sec.gov**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                                   **Plaintiff,**<br><br>              **-against-**<br><br>**DISHANT GUPTA,**<br><br>                                   **Defendant.** | **COMPLAINT**<br><br>**24-cv-12316**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Dishant Gupta ("Gupta") alleges as follows:

### PRELIMINARY STATEMENT

1.      This case involves insider trading by Dishant Gupta in the securities of Epizyme, Inc. ("Epizyme"). Epizyme was a publicly traded, Massachusetts based pharmaceutical company prior to its acquisition by Ipsen Biopharmaceuticals, Inc. ("Ipsen"), a French biopharmaceutical company. Gupta, an Ipsen employee, became aware of Ipsen's interest in

acquiring Epizyme or its premier drug in the course of his employment, and traded on this material nonpublic information.

2. Between approximately January 2022 and June 2022 (the "Relevant Period"), Ipsen and Epizyme discussed a potential transaction, with Ipsen ultimately announcing that it would acquire Epizyme on June 27, 2022.

3. During the Relevant Period, Gupta, through his employment, became aware of the potential transaction between Ipsen and Epizyme.

4. Despite his obligation to hold Ipsen's confidential information in strict confidence, and to refrain from using it to his benefit, Gupta traded on it, accumulating Epizyme shares between April 7 and June 24, 2022.

5. After the acquisition was announced on June 27, 2022, Gupta sold the Epizyme shares he had acquired, realizing approximately $260,000 in illicit profits.

6. By virtue of the foregoing conduct and as alleged further herein, Gupta has violated, and unless enjoined and restrained, will continue to violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

7. The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) [15 U.S.C. § 78u(d)] and 21A(a) [15 U.S.C. § 78u-1(a)].

8. The Commission seeks a judgment: (a) permanently enjoining Gupta from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Gupta to disgorge all ill-gotten gains he received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and

21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Gupta to pay civil money penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; (d) permanently prohibiting Gupta from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to Exchange Act Sections 21(d), 21(e), and 27 [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

10.     Gupta, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

11.     Venue lies in this District pursuant to Exchange Act Section 27 [15 U.S.C. § 78aa]. Gupta transacts business in Massachusetts and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including that Gupta initially acquired the material nonpublic information while working in Ipsen's office in Cambridge, Massachusetts.

## DEFENDANT AND OTHER RELEVANT ENTITIES

12.     **Gupta**, age 40, is a resident of Hillsborough, New Jersey. Gupta joined Ipsen in September 2019 and is currently a Director of Data Strategy and Operations at Ipsen. Gupta has an MBA from the Indian Institute of Technology in Mumbai, India, and a Bachelor of Technology degree from the Netaji Subhas University of Technology in Delhi, India. Gupta

does not hold any securities licenses and has never been registered with the Commission in any capacity.

13.     **Epizyme** was a Delaware corporation with its principal place of business in Cambridge, Massachusetts.  Epizyme was a pharmaceutical company.  Prior to its acquisition by Ipsen, announced on June 27, 2022, and finalized later that year, Epizyme's securities were registered pursuant to Section 12(b) of the Exchange Act and traded on the NASDAQ under the ticker "EPZM."

14.     **Ipsen** is a French corporation with its principal place of business in Paris, France. Ipsen is a biopharmaceutical company with approximately 5,000 employees and a commercial presence in over thirty countries.  One of Ipsen's three global hubs is in Cambridge, Massachusetts.  Ipsen's securities trade on the Euronext Paris Exchange, and its American Depository Receipts ("ADRs"), which are registered with the Commission, trade on the over-the-counter markets in the United States.

## FACTUAL ALLEGATIONS

### A.     Background on Transaction

15.     In approximately January 2022, Ipsen and Epizyme first discussed the possibility of Ipsen purchasing Epizyme's premier product, a cancer drug called Tazverik.

16.     Ipsen and Epizyme entered into a confidentiality agreement on or about February 7, 2022, and Ipsen proceeded with due diligence in March 2022.

17.     By April 7 or April 8, 2022, the two companies progressed to discussing a potential acquisition of Epizyme by Ipsen, rather than just the sale of Tazverik.

18.     On June 27, 2022, Ipsen announced that it would be acquiring Epizyme for a base price of $1.45 per share.

**B.     Gupta's Role and Duty of Confidentiality to Ipsen**

19.     Gupta joined Ipsen as a "Business Insight Lead" in September 2019.

20.     In that role, Gupta managed data analytics projects to help determine business strategies.

21.     In November 2021, Gupta was promoted to Director of Data Strategy and Operations.

22.     In both roles, Gupta supported Ipsen's "Value and Access" group, which is involved, among other things, in marketing, strategic pricing of products, and managing key customer accounts.

23.     At all relevant times, Gupta was officially based in Ipsen's Cambridge office, but often worked out of his residence in New Jersey.

24.     Gupta signed an employment agreement (the "Employment Agreement") on August 14, 2019, a few weeks before he started working at Ipsen.

25.     Among other things, Gupta agreed to the Employment Agreement's confidentiality provisions, which stated that Gupta was to "hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization . . . any Confidential Information" of Ipsen.

26.     The Employment Agreement defined "Confidential Information" to include any nonpublic information that "relate[d] to the actual or anticipated business" of Ipsen.

27.     Gupta also received training related to insider trading while employed at Ipsen, including completing Ipsen's Confidentiality and Insider Trading training on September 3, 2021.

28.     This training warned employees to refrain from using special knowledge learned through their employment to trade in securities, and specifically referred to information

regarding a proposed merger or business development arrangement as an example of material nonpublic information.

29.     In addition, Gupta received and was subject to Ipsen's Code of Conduct, and received training on Ipsen's Code of Conduct including on May 25, 2021 and June 27, 2022.

30.     Ipsen's Code of Conduct included an insider trading section which contained, in sum and substance, the warnings and guidance referred to in paragraph 28.

      **C.**     **Gupta Becomes Aware of Material Nonpublic Information**

31.     As described herein, months before the transaction was announced, Gupta became aware that Ipsen was interested in acquiring Epizyme or its drug Tazverik.

32.     On or around March 24, 2022, a senior Ipsen executive ("Ipsen Employee A") asked a more junior Ipsen executive ("Ipsen Employee B") to assist with diligence efforts related to the potential acquisition of Tazverik.

33.     Ipsen Employee B prepared notes on or about March 24, 2022, for a meeting scheduled for the next day, which specifically refer to Epizyme and contained bullets that related to the status, market potential, and marketing strategy for a drug, which in context appeared to be Tazverik.

34.     Gupta met with Ipsen Employee B in person at Ipsen's Cambridge office on March 25, 2022.

35.     After the meeting on March 25, 2022, referenced in paragraph 34, Gupta had a series of communications with another Ipsen employee ("Ipsen Employee C").

36.     Gupta and Ipsen Employee C spoke by phone for nearly 45 minutes that day, and across a series of instant messages, Gupta said to Ipsen Employee C "don't say anything to him," "or even hint about this," and "else I will be gone [smile emoji]."

37.     In the evening of March 25, 2022, Gupta sent an email to two Ipsen employees, including Ipsen Employee B.

38.     In the email, Gupta thanked his colleagues "for bringing [him] into the loop on this topic," and attached a slide deck titled "Ipsen US Onc. – Capacity Planning," which related to the commercial sales model for Ipsen's U.S. oncology business.

39.     The slide deck Gupta drafted contained references to a "new asset," and a "new product that we are planning to acquire" that "comes with a pre-existing sales force," and in context, these references appear to relate to Epizyme or Tazverik.

40.     Gupta received an invitation for a meeting on March 31, 2022, at which an executive was to present on Ipsen's strategy for oncology acquisitions.

41.     This meeting was scheduled just one day after Ipsen submitted a nonbinding pricing proposal to Epizyme for the purchase of Tazverik.

42.     In early April 2022, Gupta had additional conversations with Ipsen Employee C related to Epizyme and/or Tazverik.

43.     In late April and early May 2022, Gupta received multiple iterations of another slide deck related to an "organizational review" for the Value and Access group, which references a "new asset" in multiple contexts, including asking "do we need to do anything for the new asset???" on a slide titled "Next Steps."

44.     By the time Gupta received that slide deck, Ipsen and Epizyme had been in advanced discussions on the sale of Tazverik and had in fact progressed to discussing the full acquisition of Epizyme by Ipsen.

45.     Finally, on June 27, 2022, the date the transaction was announced, Gupta forwarded a company-wide email concerning the acquisition to Ipsen Employee B,

congratulating him and noting that he was "sure there was [a] lot of hard [work] behind the scenes on this big-ticket item."

46.     Gupta was to be tasked with projects related to the acquisition and the "onboarding" of Epizyme by Ipsen, and his June 27, 2022, email indicates that he knew this was the case in advance, as he said "looking forward to the shared folder, so that I can start screening the information behind the scenes."

47.     In addition, Gupta ran Epizyme-related internet searches throughout April, May, and June 2022, reflecting his awareness of the potential transaction.

48.     For example, on April 25, 2022, Gupta searched "Epizyme buyout," on May 27, 2022, he searched "Epizyme takeover," and on June 18, 2022, nine days before the acquisition was publicly announced, Gupta searched "Ipsen acquired Epizyme."

**D.     Gupta Trades While Aware of Material Nonpublic Information**

49.     Between April 7, 2022, and June 24, 2022, Gupta purchased Epizyme stock on 27 different days, accumulating 325,317 shares, at prices ranging from $0.43 to $1.05 per share, and averaging $0.73 per share.

50.     While engaging in the transactions described in paragraph 49, Gupta was aware of material nonpublic information regarding Ipsen's interest in acquiring Tazverik and/or Epizyme.

51.     While Gupta built a position in Epizyme throughout this period, he was most aggressive in the weeks leading up to the announcement.

52.     Specifically, between June 16, 2022, and June 24, 2022, Gupta purchased approximately 200,000 shares, spending nearly $160,000.

53.     On June 27, 2022, Ipsen announced that it was acquiring Epizyme at a base price of $1.45 per share.

54. Epizyme stock opened at $1.57 per share on June 27, 2022, up more than 65% from its prior day close of $0.95 per share.

55. By about 9:30 a.m. on June 27, 2022, Gupta had sold all of his shares of Epizyme stock.

56. In total, Gupta realized $260,078.27 in illicit profits from his trading in Epizyme.

**E.     Gupta Violated His Duty to Ipsen by Misappropriating Material Nonpublic Information**

57. Gupta owed Ipsen a duty to hold information relating to Ipsen's interest in acquiring Tazverik and/or Epizyme in strict confidence and not to use that information for personal gain, including because he agreed to maintain such information in confidence when he signed the Employment Agreement.

58. Gupta knew or recklessly disregarded that the confidentiality provisions in his Employment Agreement prohibited him from using confidential information about Ipsen's business for personal gain.

59. Gupta knew or recklessly disregarded that the information he acquired relating to Ipsen's interest in acquiring Tazverik and/or Epizyme was material and nonpublic because, among other things, the trainings he received made clear that such information was material nonpublic information.

60. Gupta intentionally or recklessly violated the duties he owed to Ipsen by using the material nonpublic information he obtained in the course of his employment to trade in Epizyme's stock for his personal benefit.

## CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

61.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 60.

62.     Gupta, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

63.     By reason of the foregoing, Gupta, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Gupta and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

### II.

Ordering Gupta to disgorge all ill-gotten gains he received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

### III.

Ordering Gupta to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1];

### IV.

Permanently prohibiting Gupta from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and

**V.**

Granting any other and further relief this Court may deem just and proper.

**<u>JURY DEMAND</u>**

The Commission demands a trial by jury.

Dated: New York, New York
       September 10, 2024

                                    /s/ Antonia M. Apps
                                    ANTONIA M. APPS
                                    REGIONAL DIRECTOR
                                    Thomas P. Smith, Jr.
                                    Sandeep Satwalekar
                                    Nicholas Karasimas
                                    Attorneys for Plaintiff
                                    SECURITIES AND EXCHANGE COMMISSION
                                    New York Regional Office
                                    100 Pearl Street
                                    Suite 20-100
                                    New York, NY 10004-2616
                                    212-336-0086
                                    KarasimasN@sec.gov